# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Robert L. Howard,

      Plaintiff

v.

Andrew M. Saul,

      Defendant[1]

Case No.: 2:17-cv-02104-JAD-DJA

**Order Overruling Objections to Magistrate Judge's Report and Recommendation, Granting Plaintiff's Motion to Remand in Part, and Denying Defendant's Cross-Motion to Affirm**

[ECF Nos. 17, 18, 22, 23]

Robert Howard seeks judicial review of the Social Security Commissioner's final decision denying him disability benefits.[2]  I referred this case to Magistrate Judge Daniel J. Albregts who reviewed Howard's and the Commissioner's cross-motions and recommends that I grant in part Howard's motion to remand this case for further proceedings.[3]  The Commissioner objects in part, arguing that the magistrate judge misapplied the law about when an administrative law judge (ALJ) is required to resolve conflicts in a vocational expert's testimony and a claimant's limitations.[4]

The question before me is narrow—did the ALJ err when he failed to ask about a conflict between the vocational expert's recommendation of a job and Howard's ability to perform its essential tasks?  Having reviewed the record de novo,[5] I find that he did.  So, I overrule the

---

[1] Andrew M. Saul is the acting Commissioner of the Social Security Administration, so I direct the Clerk of Court to substitute him as the defendant in this case under Federal Rule of Civil Procedure 25(d).

[2] ECF No. 1 (complaint).

[3] ECF No. 22 (report and recommendation).

[4] ECF No. 23 (objection).

[5] 28 U.S.C. § 636(b)(1)(C).

Commissioner's objection, adopt the magistrate judge's recommendation, and remand this case for further proceedings on this issue.

**Discussion**

**I.     The ALJ failed to resolve an apparent conflict in the record.**

To determine if a claimant is disabled under the Social Security Act, an ALJ evaluates five steps.[6]  If the ALJ finds after the first three steps that the individual does not have an impairment that meets certain definitional requirements, the ALJ must assess the claimant's residual-functional capacity, which measures a claimant's ability to work, despite his impairment.[7]  At the fifth step, the ALJ must consider what jobs are available to the claimant in light of his residual-functional capacity.[8]  To do so, an ALJ may consult a vocational expert.[9] But an ALJ may not rely on that expert's job recommendation if it conflicts with job information listed in the Department of Labor's *Dictionary of Occupational Titles*.[10]  An ALJ thus errs when he fails to resolve an apparent or obvious conflict between an expert's testimony and the *Dictionary*.[11]

The ALJ here found that Howard has the residual-functional capacity to "perform a full range of work at all exertional levels" but that he only "has the concentration, persistence[,] and

---

[6] 20 C.F.R. § 404.1520.

[7] *Id.*

[8] *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

[9] *Id.* at 806–07.

[10] *Id.* at 807 (noting that the *Dictionary* is "a resource compiled by the Department of Labor that details the specific requirements for different occupations" and guides an ALJ's analysis); *see Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

[11] *Gutierrez*, 844 F.3d at 808.

2

pace for simple 1–3 step tasks."[12]  After the ALJ presented this limitation to a vocational expert,[13] the vocational expert testified that Howard could perform work as a linen-room attendant.[14]  This occupation requires an individual to perform Level 3 reasoning, which demands application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables."[15]

The parties' dispute centers on the ALJ's step-five determination.[16]  Howard contends that this job requires reasoning beyond his limitation to "simple 1–3 step tasks."[17]  The Commissioner disagrees, arguing that Howard's limitations do not apparently conflict with the essential, integral, or expected job duties of a linen-room attendant.[18]  He adds that, even if this

---

[12] Administrative Record (AR) 24.  The record can be found at ECF No. 14-1.

[13] There appears to be a discrepancy between the hypothetical limitations that the ALJ posed to the vocational expert and Howard's ultimate limitations.  The ALJ told the vocational expert to consider a claimant who could follow "simple and/or detailed" three-step instructions.  AR 54.  But the ALJ in his report found that Howard was limited only to "simple 1-3 step tasks."  AR 20.  It is unclear why the ALJ removed "detailed" from Howard's RFC.  But if it was because Howard is unable to follow "detailed" instructions, then the hypothetical was likely unsupported by the record.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) ("The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.").  However, because no party has briefed this issue, I do not consider it for purposes of remand.

[14] AR 55.

[15] *Dictionary of Occupational Titles*, *222.387-030 (Linen-Room Attendant)*, 1991 WL 672098.

[16] The ALJ also found, based on the vocational expert's testimony, that Howard could work as an industrial cleaner, an office helper, or a laundry worker.  AR 29.  The Commissioner defends the ALJ's determination that Howard could perform work as a linen-room attendant only.  ECF No. 18 at 13.

[17] ECF No. 18 at 9–10.

[18] ECF Nos. 18 at 10; 23 at 2–3.

conflict is apparent, the ALJ's error was harmless because the record supports his ultimate finding.[19]

Magistrate Judge Albregts recommends that I find that the "simple 1–3 step" language of Howard's residual-functional capacity conflicted with the job's demand for application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables."[20]  In objecting to the Magistrate judge's recommendation,[21] the Commissioner now argues that Level 3 reasoning is not an essential, integral, or expected requirement for a linen-room attendant.[22]  So I must decide whether Howard's limitation to simple three-step tasks apparently conflicts with the duties of a linen-room attendant.  I find that it does.

Based on the listing, it is "likely and foreseeable" that Level 3 reasoning is a necessary part of a linen-room attendant's job.[23]  This position requires an individual to complete various inventories; count and assemble items on a cart, record the number of items needed to "fill requisitions," and then transport the correct amounts to different floors; and to mend torn items.[24]

---

[19] ECF No. 23 at 3–6.

[20] ECF No. 22 at 9–10.

[21] *See* 28 U.S.C. § 636(b)(1)(C) (noting that a district court reviews the "portions of the report . . . to which objection is made").  The Commissioner initially argued that Howard's limitations were in line with Level 3 reasoning.  ECF No. 18.  But as the Ninth Circuit explained in *Zavalin v. Colvin*, claimants who are limited to "simple" and "repetitive tasks" are likely unable to perform Level 3 reasoning because "instructions in diagrammatic form" "can be abstract" and beyond that person's residual functional capacity.  *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (quoting *Adams v. Astrue*, No. C 10-2008, 2011 WL 1833015, at *4 (N.D. Cal. May 13, 2011)).  Although I recognize that Howard is not limited to "repetitive" tasks, the nature of his "simple" limitation is in line with *Zavalin*'s reasoning.

[22] *Compare* ECF No. 18, *with* ECF No. 23.

[23] *See Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

[24] *Dictionary, 222.387-030 (Linen-Room Attendant)*, 1991 WL 672098.

Someone who is limited to simple three-step tasks may, for example, be unable to follow sewing instructions included in diagram form.  Or he may be unable to keep track of the linen numbers to complete inventories and distributions.  There was thus an "apparent conflict between" Howard's residual-functional capacity—which limited him to, at most, simple tasks with three steps—and a job that demands Level 3 reasoning.[25]

While it is possible that Howard is still able to perform these tasks and that the conflict does not prevent a non-disability determination, that was for the ALJ to determine before relying on the vocational expert's testimony.  And as Magistrate Judge Albregts noted, the "plain reading of simple 1–3 step tasks reveals that it may conflict with being able to apply" Level 3 reasoning.[26]  Reviewing this language de novo, I agree with Magistrate Judge Albregts that the plain meaning of the ALJ's decision reflects that Howard's limitations more closely mirror Level 2 reasoning, which requires the ability to "carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving few concrete variables."[27]  Thus I find that the ALJ erred when he failed to "reconcile" this conflict.[28]

At the heart of the Commissioner's objection is his argument that the magistrate judge failed to consider the Ninth Circuit's holding in *Gutierrez v. Colvin*.[29]  The Commissioner argues that, under *Gutierrez*, an ALJ's failure to investigate a conflict is only erroneous when the expert's testimony conflicts with a job listing's essential, integral, or expected job requirements.

---

[25] *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (finding apparent conflict between apparent a limitation to two-step instructions and Level 2 reasoning).

[26] ECF No. 22 at 10.

[27] *See Rounds*, 807 F.3d at 1003 ("Only tasks with more than one or two steps would require 'detailed instructions.'").

[28] SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).

[29] *Gutierrez*, 844 F.3d at 808.

Case 2:17-cv-02104-JAD-DJA   Document 29   Filed 12/18/20   Page 6 of 9

But that is not what *Gutierrez* holds.  In that case, the claimant's arm limitations prevented her from reaching overhead or lifting more than five pounds.[30]  The vocational expert testified that with this limitation, the claimant could work as a cashier.[31]  But the cashier definition included a frequent-reaching requirement.[32]  While a conflict existed between this requirement and the claimant's limitations, it was not an apparent one.[33]  The court determined that, based on common experience, it was well-known that typical cashiers do not have to frequently reach overhead.[34]  It noted that because only exceptional cashiering jobs require deviating from this limitation, the ALJ was not required to ask the expert to resolve that conflict.[35]  Thus, far from establishing a bright-line rule as the Commissioner suggests, the *Gutierrez* court held that the conflict determination is a fact-specific inquiry and explained that "tasks that aren't essential, integral, or expected parts of a job are *less likely to qualify* as apparent conflicts that the ALJ must ask about."[36]

Later cases confirm this reading of *Gutierrez*.  In *Lamear v. Berryhill*, the Ninth Circuit explained that "the more obscure the job, the less likely common experience will dictate the result."[37]  The *Lamear* court held that it could not rely on common experience to answer whether a claimant with limited hand mobility could perform jobs that likely required use of both hands

---

[30] *Gutierrez*, 884 F.3d at 807.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 808–09.

[34] *Id.* at 808.

[35] *Id.*

[36] *Id.* (emphasis added).

[37] *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

6

to "perform [the] essential, integral, or expected tasks" of those jobs.[38]  Thus, the less common a

job is, the more likely it is that an ALJ will not be able to spot and dismiss potential conflicts

without seeking further clarification from the vocational expert.[39]

Here—and unlike a cashier who most people interact with on a weekly basis—

significantly less common experience exists with linen-room attendants whose work often occurs

outside the public's view.  Instead, like the uncommon *Lamear* occupations, common experience

cannot dictate the reasoning level needed to follow instructions as a linen-room attendant.

Though the responsibilities may seem "elementary," as the Commissioner suggests, this job's

integral tasks are not so common that the ALJ could easily dismiss the conflict between

Howard's limits and the job, without asking for clarification from the vocational expert.  And

although this conflict is likely resolvable, the ALJ did not do so.  When an ALJ fails to

"recognize the apparent conflict between [a claimant's] RFC and the demands of Level [Three]

reasoning" courts are unable to "determine whether substantial evidence supports the ALJ's step-

five finding."[40]  So "[o]n remand, the ALJ must determine whether there is a reasonable

explanation to justify relying on the [vocational expert's] testimony."[41]

**III.    The ALJ's error was not harmless.**

The Commissioner argues that even if there was a conflict, the ALJ's error was

ultimately harmless because substantial evidence in the record supported a finding that Howard

---

[38] *Id.*

[39] *Id.*

[40] *Rounds*, 807 F.3d at 1004 (citation omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (holding that a district court may not affirm an ALJ's decision that is not supported by substantial evidence or free from legal error).

[41] *Id.*; *Lamear*, 865 F.3d at 1206 ("Absent anything in the record to explain this apparent discrepancy, we must reverse and remand so the ALJ can ask the VE to reconcile these jobs with [the claimant's] limitations.").

could perform Level 3 reasoning tasks.  The Commissioner argues that the magistrate judge misapplied the harmless error standard set forth in *Zavalin v. Colvin* because he did not analyze "whether substantial evidence in the record existed to support" the ALJ's ultimate conclusion.[42] To support this argument, the Commissioner cites several medical opinions in the record that reflect that Howard does not have problems with following directions or instructions.[43]  He adds that Howard reported having average grades in school and that Howard admitted to not having any problems in his previous work.[44]

But as the Commissioner admits, the ALJ did not rely on this evidence to conclude Howard has the concentration, persistence, and pace for "simple 1–3 step tasks."[45]  Instead the ALJ relied on three consultants that found Howard could perform simple and/or detailed three-step tasks.[46]  Because the court may not "affirm" the ALJ's decision "on a ground that the agency did not invoke in making its decision," I cannot find that these portions of the record support the finding and that the error was harmless.[47]  As the magistrate judge noted, the record here is underdeveloped as to whether Howard's "simple 1–3 step" limitation allows him to perform Level 3 reasoning because the ALJ's decision does not reflect why this limitation exists.

---

[42] ECF No. 23 at 3.

[43] *See id.* at 4.

[44] *Id.*

[45] *Id.*

[46] AR 19.

[47] While the Commissioner notes that the consultants assigned Howard the ability to complete "detailed" tasks, the ALJ apparently did not rely on those portions of the findings, because he found that Howard was limited only to "simple 1–3 step tasks."  *Compare, e.g.*, AR 69, *with* AR 20.  So I cannot consider it.

1

**Conclusion**

2        IT IS THEREFORE ORDERED that the Clerk of Court is directed to substitute Andrew

3   M. Saul for Nancy Berryhill as the defendant in this case.

4        IT IS FURTHER ORDERED that the Commissioner's objection to the report and

5   recommendation **[ECF No. 23] is OVERRULED** and the magistrate judge's report and

6   recommendation **[ECF No. 22] is ADOPTED.**

7        IT IS FURTHER ORDERED that Howard's motion to remand **[ECF No. 17] is**

8   **GRANTED** in part.

9        IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm **[ECF No.**

10  **18] is DENIED.**

11       **The Clerk of Court is directed to ENTER JUDGMENT in Howard's favor,**

12  **REMAND THIS CASE to the SSA for further proceedings consistent with this order, and**

13  **CLOSE THIS CASE.**

14

15

16       _____
                        U.S. District Judge Jennifer A. Dorsey

17                                  December 18, 2020

18

19

20

21

22

23

9